UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH ORTIZ,                                          1:20-CV-01555-JLS-MJR

                Plaintiff,                        REPORT and RECOMMENDATION

    -v-

ORLEANS COUNTY, et al.,

                Defendants.
_____

      This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr. pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 13).

      Before the Court is a partial motion to dismiss brought by Defendants Orleans County; Orleans County Sheriff Randy Bower; Orleans County Sheriff Sergeant First Class Christopher Caufield; Orleans County Jail Superintendent Scott D. Wilson; Orleans County Jail Sergeant Anthony J. Mignano; Orleans County Jail Sergeant Michael Christopher; and Orleans County Jail Corrections Officer Phillip Schening, Jr. under Rule 16(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 18). For the following reasons, it is recommended that the motion be granted in part and denied in part.

## **PROCEDURAL HISTORY**

      Plaintiff Kenneth Ortiz commenced this action against Defendants Orleans County, the Orleans County Sheriff, the Orleans County Jail Superintendent, and employees of the Sheriff's Office and Jail following an incident which occurred on September 27, 2019, when Ortiz was an inmate in the custody of the Orleans County Jail. (Dkt. No. 14). Based

upon this incident and actions taken thereafter, Plaintiff alleges violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and New York law. (*Id*.).

Defendants first brought a partial motion to dismiss (Dkt. No. 12), in response to which Plaintiff filed an amended complaint, which is now the operative pleading. (Dkt. No. 14). In light of that, Defendants withdrew their motion to dismiss and advised of their intent to file a new motion based on the amended complaint. (Dkt. No. 16).

On May 4, 2021, Defendants filed the instant motion to dismiss Plaintiff's second, third, fourth, and seventh causes of action. (Dkt. No. 18). Plaintiff responded in opposition. (Dkt. 19). Defendants filed a reply memorandum. (Dkt. No. 20).

On June 15, 2021, the Court heard oral argument on the motion to dismiss. The Court requested supplemental briefing at that time. The parties submitted supplemental briefs (Dkt. Nos. 22; 23), and responses (Dkt. Nos. 24; 25). The Court then considered the matter submitted for report and recommendation.

## **BACKGROUND**[1]

Ortiz's allegations concern a series of events which occurred while he was a pre-trial detainee, and subsequently an inmate, in the custody the Orleans County Sheriff at the Orleans County Jail in Albion, New York. (Dkt. No. 14, ¶¶ 14-16). On September 30, 2019, Ortiz plead guilty to misdemeanor harassment and was sentenced to confinement in the Orleans County Jail. (Dkt. No. 14, ¶ 30, 45). Prior to that date, the parties agree that Ortiz was a pretrial detainee who was not yet convicted of a crime.

---

[1] The facts in this section are taken from Plaintiff's Amended Complaint (Dkt. No. 14) and are assumed to be true for purposes of this motion.

On September 27, 2019, at approximately 1:40 p.m., Ortiz was in the booking room at the Orleans County Jail, waiting to be escorted to an Orleans County Court appearance. (*Id*., ¶ 17). During this time, Ortiz was handcuffed, shackled, or otherwise restrained. (*Id*.). Sergeant Caulfield pushed or shoved Ortiz, causing him to fall to the ground and suffer injuries. (*Id*., ¶¶ 18-19). Ortiz alleges that the use of physical force was contrary to the policies of Orleans County Sheriff. (*Id*., ¶¶ 21, 49). The incident was recorded by surveillance video. (*Id*., ¶ 20).

Thereafter, Sergeant Caufield issued an incident report, which Ortiz alleges was false, to the effect that Ortiz was "passively refusing to follow directions to go to County Court. Threw himself on the ground and faked a back injury." (*Id*., ¶ 22-23). In an incident report form dated September 27, 2019, Sergeant Caufield also stated that he merely placed his hand on "inmate Ortiz's left shoulder to direct him towards the tunnel and he launched himself onto the hallway floor." (*Id*.).

As a result of the disciplinary report, Ortiz's "status was changed to that of administrative segregation, where his privileges were curtailed." (*Id*., ¶ 24). Ortiz remained in administrative segregation from September 27, 2019 until October 2, 2019. (*Id*., ¶ 25). Ortiz alleges that his status should not have been changed because there was not a reasonable ground to believe that he presented a threat to safety, security, and good order of the facility. (*Id*., ¶ 27). Ortiz alleges this action was in violation of 9 NYCRR § 7006.7(c) which regulates administrative segregation pending a disciplinary hearing. (*Id*., ¶ 28-29).

On or about October 2, 2019, an inmate disciplinary hearing was conducted by Jail Sergeant Mignano. (*Id*., ¶ 31). Ortiz was not provided the opportunity to call witnesses or

present evidence in his defense, and despite repeated requests by Ortiz, video of the incident was not reviewed. (*Id*., ¶¶ 35, 36). Ortiz alleges that Sergeant Caufield falsely presented evidence at the hearing. (*Id*., ¶ 32). Jail Sergeant Christopher, who witnessed the incident, attended the disciplinary hearing but failed to correct Sergeant Caufield's false allegations. (*Id*., ¶ 33). Officer Schening also attended the disciplinary hearing and did not protect Ortiz's rights. (*Id*., ¶ 34). Ortiz was found to have "passively refus[ed] orders for not immediately walking to a location directed by" Sergeant Caufield and was confined to the special housing unit or "keeplock" from October 2, 2019 until October 21, 2019. (*Id*., ¶ 39-41). In "keeplock," Ortiz was released from his cell for only one hour per day and was denied other privileges. (*Id*., ¶ 46).

Ortiz alleges, upon information and belief, that the incident and the disciplinary hearing were reported to Sheriff Bower and Superintendent Wilson, neither of whom intervened. (*Id*., ¶ 43). He does not specify how such a report was made. Ortiz filed a grievance against Sergeant Caufield, which was denied, and "[his] grievance of the disciplinary sanctions imposed upon him were denied as having been non-grievable." (*Id*., ¶¶ 37-38). The New York State Commission of Correction, Citizens Policy and Complaint Review Council reviewed the grievance filed by Ortiz, finding that, in violation of 9 NYCRR § 7032.4(f), the chief administrative officer or grievance coordinator failed to investigate and address Ortiz's complaints. (*Id*., ¶ 48). The Council found that the grievance coordinator at Orleans County Jail failed to issue a written determination specifying the facts and reasons underlying the coordinator's determination. (*Id*.). The Council also noted that Ortiz's daily and weekly time out of confinement while placed in disciplinary segregation was not adequate under 9 NYCCR § 7075.4(c). (*Id*.).

Based on these allegations, Ortiz asserts the following causes of action: (1) negligence under New York Corrections Law § 500-c against Sheriff Bower; (2) negligent hiring, training, supervision, discipline, and retention against Sheriff Bower; (3) *Monell* claim against Sheriff Bower; (4) 42 U.S.C. § 1983 claim for violation of Plaintiff's Eighth and Fourteenth Amendment rights to procedural due process against all defendants except Orleans County; (5) state law battery against Sergeant Caufield; (6) § 1983 claim for excessive use of force under the Eighth and Fourteenth Amendments against Sergeant Caufield; and (7) negligence under New York County Law § 217 against Orleans County. (Dkt. No. 14). He seeks damages, as well as attorney's fees and costs. (*Id*., pg. 20).

## DISCUSSION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss Plaintiff's second cause of action for negligent hiring, training, supervision, discipline and retention, third cause of action for *Monell* liability, fourth cause of action for § 1983 liability, and seventh cause of action for negligence under County Law § 217. (Dkt. No. 18). They argue that each of these claims fails as a matter of law.

### I.    Rule 12(b)(6) Standard

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all

factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense...[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Bell Atl. Corp.*, 550 U.S. at 679. Review of a Rule 12(b)(6) motion is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004).

## II.    Materials Outside the Pleadings

When presented with a 12(b)(6) motion, the district court may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment. *Courtenay Communs. Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003). The Court may consider: "(1) the facts alleged on the face of the complaint; (2) documents attached to the complaint as exhibits; (3) documents incorporated in the complaint by reference; and (4) matters of which the court may take judicial notice." *Lightner v.*

*Wenderlich*, 271 F. Supp. 3d 445, 453 (W.D.N.Y. 2017). Even where a document is not incorporated by reference, the court may nonetheless consider it where the complaint "relies heavily upon its terms and effect," which renders the documents "integral" to the complaint. *Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002); *accord Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995). If the Court relies on extrinsic evidence not incorporated by reference or integral to the complaint, it is obligated to convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and give the parties "a reasonable opportunity to present all the material that is pertinent" to the specific issue that is before the court on the motion to dismiss. *See Schafer v. Direct Energy Servs., LLC*, 845 Fed. Appx. 81, 83 (2d Cir. 2021) (quoting Fed. R. Civ. P. 12(d)); *see also Friedl v. City of New York*, 210 F.3d 79, 83 (2000).

At the Court's request, Defendants provided a copy of the video recording of the incident. Within their supplemental brief, Defendants also submit the declaration of Defendant Scott D. Wilson and documentary evidence from the Orleans County Sheriff's Office Jail Division regarding this incident and the resulting disciplinary hearing. (Dkt. No. 22-1; 22-2). The exhibits submitted include several Incident Report Forms, an Inmate Disciplinary Notification, Disciplinary Packet, and Disciplinary Sanction Notification. (*Id*.). Defendants request that this evidence be considered by the Court and that their motion to dismiss be converted to a motion for summary judgment.

Plaintiff concedes that the surveillance video depicting the alleged assault is incorporated by referenced and integral to his complaint. As there is no contest to the inclusion of the recording, the Court has considered it, although its effect on the legal issues addressed in this motion is limited. *See Garcia v. Doe*, 779 F.3d 84, 87 (2d Cir.

2014) ("We will consider videos submitted by defendants, which plaintiffs concede are
[…] incorporated into the Complaint by reference."). However, Plaintiff opposes admission
of the Wilson Declaration and exhibits relied on by Defendants as being outside the
pleadings and not falling within any of the enumerated categories of items properly
considered at this stage. The Court agrees that none of these documents are
incorporated by reference or integral to the Complaint, and are therefore outside the
Court's review for purposes of this motion to dismiss. *See Acquest Holdings, Inc. v.
Travelers Cas. & Sur. Co. of Am.*, 217 F. Supp. 3d 678, 684 (W.D.N.Y. 2016).

Plaintiff further opposes conversion of this motion to one for summary judgment
prior to discovery. Courts have declined to convert where, as here, "plaintiffs have not
filed any material outside their pleadings in response to [the] motion to dismiss, and . . .
discovery is at a preliminary stage. . . ." *Acquest Holdings*, 217 F. Supp. 3d at 685 n.2
(citation omitted). At this time, defendants have not yet answered the complaint and
discovery has yet to begin. Defendants also failed to include a statement of material facts
as required by Fed. R. Civ. P 56(c)(1)(A) and W.D.N.Y. Loc. R. 56(a)(1). In light of this,
the Court declines the request to convert the motion to dismiss to a motion for summary
judgment. *See Jordan v. Domino's Pizza Inc.*, 16-CV-678, 2017 U.S. Dist. LEXIS 3751,
at *22-25 (W.D.N.Y. Jan. 9, 2017). Defendants will have an opportunity to renew these
arguments following discovery in this action or submission of a proper summary judgment
motion.

### III.    Application

#### 1.    *Negligent Hiring, Training, Supervision, Discipline and Retention*

Defendants move to dismiss Plaintiff's claim against Sheriff Bower for negligent hiring, training, supervision, discipline, and retention of employees because the conduct alleged occurred within the scope of the employees' duties.

It is well settled under New York law that a claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of his employment. *Newton v. City of New York*, 681 F. Supp. 2d 473, 488 (S.D.N.Y. 2010).

> To state a claim for negligent supervision, a plaintiff must first demonstrate that an employee was negligent. The plaintiff must then allege "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels."

*Id.*, at 487-88. Liability on a claim for negligent hiring, training, supervision, and retention typically arises only where an employee has engaged in conduct *outside* the scope of his employment, such that the employer could not otherwise be held vicariously liable, and liability is instead premised upon the employer's failure to act on a known risk concerning conduct outside of any employee's duties. *Nieves v. City of Rochester*, 08-CV-6537-DGL, 2011 U.S. Dist. LEXIS 24594, at *10 (W.D.N.Y. Mar. 10, 2011) (emphasis in original). Indeed, "the great weight of the authority teaches that a negligent training claim is viable under New York law only when the alleged wrongful conduct occurred outside the scope of employment." *Velez v. City of New York*, 04-CV-1775, 2012 U.S. Dist. LEXIS 51820, at *19 (E.D.N.Y. Mar. 31, 2012) (collecting cases), *aff'd* 730 F.3d 128 (2d Cir. 2013).

Here, plaintiff's allegations are based on defendants' conduct during the performance of their duties as jail employees regarding the safekeeping of inmates and the conduct of disciplinary hearings. Plaintiff alleges no facts concerning actions committed by policymakers or by employees acting outside the scope of their normal duties; he merely alleges that they performed those duties negligently. *See Nieves*, 2011 U.S. Dist. LEXIS 24594, at *11.

Plaintiff acknowledges that liability for negligent hiring, supervision, or training generally does not attach unless employees have acted outside the scope of their employment. However, he contends that, because a sheriff cannot be held vicariously liable for the negligence of his deputies,[2] the law provides that a sheriff can be held liable for negligent training or supervision of his subordinates for their actions within the course of their employment. *See Barr v. County of Albany*, 50 N.Y.2d 247, 257 (1980) (citing *Meistinsky v. City of New York*, 285 App. Div. 1153 (2d Dep't 1955), *aff'd* 309 N.Y. 998 (1956)) (holding that "a cause of action sounding in negligence is legally sustainable against [a municipality] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer"). Plaintiff submits that the *Barr* exception to the general rule should be applied here because Sheriff Bower is otherwise immune from vicarious liability for the common-law negligence of his employees.[3]

---

[2] *See Cash v. County of Erie*, 04-CV-0182, 2007 U.S. Dist. LEXIS 50129, at *13 (W.D.N.Y. July 10, 2007) ("It is […] well established that a Sheriff cannot be held vicariously liable for deputies' negligent acts committed while performing criminal justice functions, and that "'guarding prisoners' in a county jail is a criminal justice function.") (internal citations omitted).

[3] Plaintiff cites to *Pendergraph v. City of Syracuse*, 19-CV-0291, 2020 U.S. Dist. LEXIS 26928, at *15-16 (N.D.N.Y. Feb. 18, 2020) as an instance in which federal courts have relied favorably on the rule enunciated in *Barr*. Despite this, in *Pendergraph* the Court concluded that the claim negligent training or

The matter of *Velez v. City of New York*, which was affirmed on appeal, is instructive here. *See* 2012 U.S. Dist LEXIS 51820, at *19-22; 730 F.3d at 136-37. There, the plaintiff opposed dismissal of her negligent training claim, arguing, in part, that a claim of negligent training does not require that the employees were acting outside the scope of their employment, as a matter of law. *Id*. at 19. The Court rejected plaintiff's reliance on *Meistinsky* and declined to apply any exception to the substantial authority that a negligent training claim is viable under New York law *only* when the alleged wrongful conduct occurred outside the scope of employment. *Id*. at *21-22. Here, as in *Velez*, there is "no question that the alleged acts and omissions comprising the gravamen of the complaint were all chargeable to officers performing within the scope of their employment," and this Court sees no justification to depart from the well-established precedent. *Id*. at *22.

Further, even if there was a legal opening for liability in this context, Plaintiff has made no plausible allegation that Sheriff Bower knew or should have known of any employee's propensity for the conduct which caused plaintiff's alleged injuries. *See Peterec v. Hilliard*, 12-CV-3944, 2013 U.S. Dist. LEXIS 132118, at *47 (S.D.N.Y. Sept. 16, 2013) (claim dismissed where plaintiff did not set forth facts plausibly showing that Orange County knew of the propensity of its employees, prosecutors in the District Attorney's Office, to pursue a frivolous case against plaintiff). Plaintiff alleges that Sheriff Bower "knew or should have known of other defendants' propensities and conduct

---

supervision claim against the municipality could proceed because the allegations "suggest[ed] that the Jane Doe Officer may have acted outside the scope of her employment." *Id*., at *16. Plaintiff also relies on *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 268 (N.D.N.Y. 2014), which stands for nothing more than *Barr's* premise that "[a] municipality may be held liable for negligently training or supervising its law enforcement officers."

resulting in disregard for the constitution," as well as rules, regulations, and protocols on the administration of inmate discipline, use of force, and inmate interaction. However, such allegations are conclusory and unsupported. *See Cruz v. New York*, 24 F. Supp. 3d 299, 311-12 (W.D.N.Y. 2014) (dismissing a negligent hiring, retention, and training claim because plaintiff's allegations that supervisory defendants knew or should have known that subordinate officers were "potentially dangerous" were conclusory and unsupported by any factual allegations). Plaintiff makes no allegation that Sheriff Bower knew of any past excessive force incidents involving Sergeant Caufield, nor of any past disregard for protocols of inmate discipline by Superintendent Wilson, Sergeant Caufield, Sergeant Mignano, Sergeant Christopher, or Officer Schening.

For these reasons, the Court recommends that Plaintiff's second cause of action be dismissed.

### 2. *Procedural Due Process Claim*

Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983. Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivations of rights established elsewhere. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To state a claim for damages under 42 U.S.C. § 1983, the conduct at issue "must have been committed by a person acting under color of state law" and "must have deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Plaintiff alleges that he was denied his constitutional right to due process under the Eighth and Fourteenth Amendments by Sheriff Bower, Sergeant Caufield, Superintendent Wilson, Sergeant Mignano, Sergeant Christopher, and Officer Schening.[4] He alleges that his right to procedural due process was violated when, as a pretrial detainee, he was placed in administrative segregation status, and his privileges were curtailed, as a result of a false disciplinary report and defendants' collective failure to review or remedy his change in status. Plaintiff further alleges that his right to procedural due process was violated by the filing of a false incident or disciplinary report, the conducting of a procedurally improper disciplinary hearing, and resulting punishment of Plaintiff, as a convicted inmate.

Defendants seek dismissal of this cause of action on the basis that Plaintiff fails to state a cognizable claim for violations of his due process rights because he had no protected liberty interest implicated by his placement in "keeplock" or administrative segregation. Notwithstanding the lack of a liberty interest, they assert that the disciplinary hearing provided sufficient process. Further, they argue that Plaintiff's § 1983 claims against Defendants Bower, Wilson, Caufield, Mignano, Christopher, and Schening in their individual capacities should be dismissed because there was no underlying constitutional

---

[4] Plaintiff's framing of this claim as arising, in part, under the Eighth Amendment is misplaced. Plaintiff explicitly characterizes this claim, and his *Monell* claim, as violations of procedural due process. The Eighth Amendment, which protects against "cruel and unusual punishment," contains no such due process clause. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Plaintiff later argues in response to this motion that the conditions of his post-conviction solitary confinement violated the Eighth Amendment and "evolving standards of decency." (Dkt. No. 19, pgs. 9-10). Plaintiff cites expert opinions and relies solely on a District Court decision, in which the allegation of a statewide policy of isolating and confining inmates for at least 22 hours per day was deemed adequate to survive a motion to dismiss the Eighth Amendment claim. *See Harvard v. Inch*, 411 F. Supp. 3d 1220, 1238-40 (N.D. Fla. 2019). The Court rejects Plaintiff's assertions as lacking sufficient authority and being improperly pled. The Court recommends that the portion of Plaintiff's underlying § 1983 claim, and his *Monell* claim, purportedly arising under the Eighth Amendment be dismissed.

violation to support a failure to intervene claim and, with the exception of Caufield, Plaintiff fails to allege sufficient personal involvement.

    *a.  Standards Applicable to Pretrial Detainees vs. Prisoners*

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (citation omitted). To state a § 1983 claim for denial of due process, a plaintiff must establish both the existence of a "liberty or property interest which has been interfered with by the State," and that the process provided to the plaintiff prior to the deprivation was constitutionally insufficient. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004); *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). "A prisoner's liberty interest is implicated by prison discipline … only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Factors relevant to determining whether a prisoner endured an "atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer*, 364 F.3d at 64. Notably, "a violation of state law or regulation in itself does not state a federal claim for relief under 42 U.S.C. § 1983." *Mills v. Fischer*, 497 Fed. Appx. 114, 116 (2d Cir. 2012).

Fourteenth Amendment Due Process claims by pretrial detainees are reviewed under a different standard than Due Process claims by convicted prisoners because a

pre-trial detainee "may not be punished prior to an adjudication of guilt in accordance with the law." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). This is to alleviate concern that a State would attempt to punish a detainee for the crime for which he was indicted by imposing pre-conviction holding conditions. *See Sandin*, 515 U.S. at 484. *Sandin's* ruling on when prison punishment implicates a liberty interest is applicable to convicted prisoners, not to pretrial detainees. *See Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). "Unlike convicted prisoners, who must satisfy the standard of 'atypical and significant hardship' outlined in *Sandin v. Conner*, […], a pretrial detainee need not meet such a stringent standard because '[a] detainee's interest in freedom from unjustified infliction of pain and injury is more substantial . . . .'." *Allen v. Amato*, 12-CV-534, 2013 U.S. Dist. LEXIS 131965, at *25 (N.D.N.Y. May 28, 2013) (quoting *Benjamin v. Fraser*, 264 F.3d 175, 188-90 (2d Cir. 2001)).

Yet, as the Ninth Circuit has observed:

> [t]his conclusion does not mean that pretrial detainees are free to violate jail rules with impunity. Indeed, *Bell* recognizes the need for preserving "internal order and discipline" among pretrial detainees as well as convicted prisoners. *Bell*, 441 U.S. at 546. Our conclusion does mean, however, that pretrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule.

*Mitchell*, 75 F.3d at 524.

To assess whether restrictions on pretrial detainees comport with due process, a court must decide whether the restriction is imposed for the purpose of punishment or whether it is incident to some other legitimate governmental interest. *See Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017). "Absent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose

of punishment generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Benjamin*, 264 F.3d at 188.

Where confinement is deemed to be punitive, or imposed for disciplinary reasons, the due process procedures of *Wolff v. McDonnell*, 418 U.S 539 (1974), are applicable. *See Benjamin*, 264 F.3d at 190; *see also Taylor v. Santana*, 05-CV-1860, 2007 U.S. Dist. LEXIS 18438, at *14 (S.D.N.Y. Mar. 6, 2007), *aff'd* 317 Fed. Appx. 80 (2d Cir. 2009) (explaining that if the purpose of the restraint on a pretrial detainee is punitive, it is governed by the standard in *Wolff v. McDonnell*). The *Wolff* standard requires: (1) written notice of the charges against defendant at least 24 hours before any hearing; (2) a written statements of factual allegations against the defendant; and (3) at least a limited ability to present witnesses and evidence.[5] *See Best v. New York City Dep't of Corr*, 14 F. Supp. 3d 341, 347 (S.D.N.Y. 2014).

Here, Plaintiff was a pretrial detainee at the time of the alleged incident with Sergeant Caufield on September 27, 2019. His status changed from pretrial detainee to convicted prisoner at the time of his guilty plea and conviction on September 30, 2019. The disciplinary hearing occurred on October 2, 2019, after Plaintiff's conviction. Plaintiff alleges that he was placed in administrative segregation and had his privileges curtailed immediately following the incident when he was still a pretrial detainee. After the October

---

[5] If a restraint is imposed for administrative, not punitive, reasons, "'the less protective standard established by the Supreme Court in *Hewitt v. Helms*, 459 U.S. 460 (1983),' [is applicable], which [...] requires only that the pretrial detainee 'receive some notice of the charges against him and an opportunity to present his views' to the prison official charged with deciding whether to impose the restraint." *Best*, 14 F. Supp. 3d at 347 (internal quotations omitted).

2, 2019 disciplinary hearing, Plaintiff alleges he was sent to "keeplock" confinement until October 21, 2019 as a form of punishment for the disciplinary infraction. Plaintiff asserts "the entire series of events" was due to an intent to punish, and believes that the due process protections laid out in by the Supreme Court in *Wolff* are applicable. Based on the allegations of the complaint, the Court agrees. Courts in the Second Circuit have concluded that confinement or other restraints based upon disciplinary violations or infractions are generally viewed as punishment. *See Best*, at 348-49 (collecting cases) ("special confinement based upon a disciplinary violation rings of punishment"). It is undisputed that the disciplinary process against Plaintiff was triggered by an alleged rule infraction, and thus should be viewed as punitive. The incident occurred before Plaintiff's conviction, and he alleges that he was deprived of rights both as a pretrial detainee and as a convicted prisoner.

Plaintiff acknowledges that a disciplinary hearing was held, but he plausibly alleges that he did not have an opportunity to present witnesses or evidence as required under *Wolff*. It is well established that in a prison disciplinary hearing, an inmate is not entitled to "the full panoply of rights due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Under the standards set forth in *Wolff*, an inmate is entitled to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id*. Here, Plaintiff specifically alleges that he requested that the surveillance video of the incident be reviewed, and those requests were ignored. Based on these allegations, the Court finds

that Plaintiff has plausibly alleged a claim for denial of due process under the Fourteenth Amendment.

Defendants submit that Plaintiff has not shown the existence of a protected liberty interest. They ask the Court to find that the 19-day period Plaintiff spent in "keeplock" following his October 2, 2019 disciplinary hearing does not meet the minimum duration to support a due process claim. They argue that Plaintiff's allegations do not demonstrate that the length or conditions of his confinement were atypical or posed a unique hardship, as required under the *Sandin v. Conner* analysis.

Defendants are correct that periods of confinement of this length and under these conditions are generally deemed to be insufficient to support a due process claim.[6] However, when this incident occurred, and the alleged punishment began, Plaintiff was not a convicted prisoner who must satisfy the standard of 'atypical and significant hardship' outlined in *Sandin* to sustain a claim. *See Allen*, 2013 U.S. Dist. LEXIS 131965, at *25. For at least a portion of the alleged period of restraint, Plaintiff was undoubtedly a pretrial detainee, who is entitled to disciplinary due process procedures. Plaintiff alleges that those procedures were not applied, and he was unduly punished as a result.

---

[6] The Second Circuit has not adopted a bright line rule as to what duration or conditions of disciplinary segregation or confinement in a special housing unit ("SHU") constitute an "atypical and severe hardship." *See Palmer*, 364 F.3d at 64-65. However, the Appellate Court has affirmed dismissal of due process claims when the period of time spent in SHU was "exceedingly short – less than […] 30 days […] – and there was no indication that the plaintiff endured unusual SHU conditions." *Id.*, at 65-66. Courts have consistently held that SHU or "keeplock" confinement under ordinary conditions for less than 30 days does not rise to a level sufficient to establish a due process claim. *Martin v. Oey*, 16-CV-717, 2017 U.S. Dist. LEXIS 113247, at *16 (N.D.N.Y. July 19, 2017), *adopted by* 2017 U.S. Dist. LEXIS 153106 (S.D.N.Y. Sept. 20, 2017). Further, courts have found that conditions of confinement are not unusual or atypical and do not pose significant hardship where a prisoner is confined to their cell for twenty-three hours per day, provided one hour of exercise per day, and permitted two showers per week. *Ortiz*, 380 F.3d 649, 655 (2d Cir. 2004).

Defendants further argue that even if Plaintiff had established the existence of a protected liberty interest, he received adequate constitutional process prior to his placement in "keeplock." An inmate's right to call witnesses and present evidence in a disciplinary hearing is limited, and "any violations of an inmate's qualified right to call witnesses or present documents, are reviewed for harmless error." *Jackson v. Prack*, 16-CV-7561, 2019 U.S. Dist. 200812, at *21 (S.D.N.Y. Nov. 18, 2019) (citing *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d. Cir. 2009)). "To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome." *Amaker v. Boyd*, 19-CV-1253, 2020 U.S. Dist. LEXIS 5806, at *28 (N.D.N.Y. Jan. 14, 2020).

Defendants advance several arguments to support their claim that Plaintiff received adequate process. They submit that Plaintiff does not allege that he informed jail staff of his intention to call witnesses, or objected to the failure to call witnesses, and does not state what witnesses he would have called. *See Brown v. Murphy*, 16-CV-710, 2019 U.S. Dist. LEXIS 90796, at *7-8 (S.D.N.Y. May 30, 2019) (holding that the right to call witnesses in a disciplinary hearing may be waived by failing to make or reiterate such a request). Defendants discount Plaintiff's allegation that he was not provided the opportunity to present evidence because he does not specify how such evidence would have changed the outcome of the hearing. Defendants also submit that the surveillance video was reviewed, and that it supported Sergeant Caufield's version of events.[7] The

---

[7] As discussed above, the Court declines to consider Defendants' factual claims about the incident and the disciplinary process which conflict with the facts alleged by Plaintiff. Defendants' arguments, and evidence relative to the administrative status of Plaintiff and the disciplinary process, will be relevant, and properly considered, at summary judgment or trial.

Court disagrees that this level of specificity is required at the pleading stage. Plaintiff has met his 12(b)(6) burden by plausibly alleging that he requested, and was denied, a reasonable opportunity to call witnesses and to present video evidence depicting the incident in question, the presentation of which he submits would have affected the outcome of the hearing.

### b. Personal Involvement

Defendants further move for dismissal of Plaintiff's due process claims against Defendants Bower, Wilson, Caufield, Mignano, Christopher, and Schening in their individual capacities for lack of personal involvement.

"It is well settled in [the Second] Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted). Personal involvement encompasses a police officer's "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Noga v. City of Schenectady*, 169 F. Supp. 2d 83, 88 (N.D.N.Y 2001). Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene. *Jean-Laurent v. Wilkinson*, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008) (citations omitted).

Here, Plaintiff has plausibly alleged the individual involvement of Defendant Caufield, as the officer who allegedly assaulted Plaintiff and participated in the allegedly

improper disciplinary hearing; Defendant Mignano, as the officer who conducted the disciplinary hearing and allegedly denied Plaintiff due process; and Defendants Christopher and Schening, as attendants at the disciplinary hearing who failed to intervene in the denial of Plaintiff's due process rights. Each of these allegations indicate either direct involvement in the alleged due process violation or failure to intervene despite a reasonable opportunity to do so.

Because "a prison inmate has no constitutional right to be free from being falsely accused in a misbehavior report," *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (citing *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997)), Defendants argue that the alleged filing of false reports and failure to correct such falsehoods is not actionable. Although no cause of action arises from false reports directly, Defendant's § 1983 claims are based on use of excessive force and violation of due process, which are actionable against these individuals. *See Mitchell v. Senkowski*, 158 Fed. Appx. 346, 349 (2d Cir. 2005) (holding that although false misbehavior reports or false testimony by corrections officers does not establish its own denial of due process, "such action violates due process […] where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him […] or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights.").

A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation. *Saxon v. Attica Med. Dep't*, 468 F. Supp. 2d 480, 482 (W.D.N.Y. 2007) (citation omitted). "To establish a violation of § 1983 by a supervisor,

[…] the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). In *Iqbal*, the Supreme Court identified five categories that may establish liability of a supervisory official for a subordinate's conduct under § 1983:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (citing *Colon*, 58 F.3d at 873). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

Here, Plaintiff fails to allege any individual action on the part of Sheriff Bower or Superintendent Wilson that violated his constitutional rights. Reliance on their supervisory roles, or their failure to review or remedy Plaintiff's administrative or disciplinary status, is insufficient without specific factual allegations of their knowledge, actions, or involvement in the conduct at issue. Accordingly, Plaintiff's claims against Sheriff Bower and Superintendent Wilson in their individual capacities for violation of due process rights cannot proceed.

For these reasons, the Court recommends that Plaintiff's third cause of action alleging violations of Plaintiff's Fourteenth Amendment right to due process survive this motion to dismiss, except as against Defendants Bower and Wilson, as discussed above.

### 3. *Monell Claim*

Defendants move to dismiss Plaintiff's *Monell* claim against Sheriff Bower for "fail[ing] to adequately allege the existence of a policy or custom, or allege that the County had actual notice of ongoing constitutional violations." (Dkt. No. 18-1, pg. 17). They also submit that Plaintiff's § 1983 claims against Wilson, Caufield, Mignano, Christopher, and Schening in their official capacities should be treated as *Monell* claims and are subject to dismissal for the same reasons.[8]

It is well established that "[t]here is no *respondeat superior* liability under § 1983." *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996). Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff suing a municipal corporation under § 1983 must prove that the constitutional wrong complained of resulted from the corporation's official policy, custom, ordinance, regulation, or decision. *Rookard v. Health & Hospitals Corp.*, 710 F.2d 41, 45 (2d Cir. 1983). A municipal policy or custom can be established by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to

---

[8] Defendants are correct that the claims against the individual defendants in their official capacities are construed as claims against the entity that individual represents. *See Irwin v. West Irondequoit Cent. Sch. Dist.*, 16-CV-6028, 2017 U.S. Dist. LEXIS 29982, at *10 (W.D.N.Y. Mar. 2, 1017); *Beckwith v. Erie County Water Auth.*, 413 F. Supp. 2d 214, 224-25 (W.D.N.Y. 2005).

> deliberate indifference to the rights of those who come in to contact
> with the municipal employees.

*Merrow v. Ashley*, 16-CV-6267, 2019 U.S. Dist. LEXIS 103550, at * 9-10 (W.D.N.Y. June 20, 2019). A plaintiff must prove that "policies or customs that [were] sanctioned" by the municipality led to the alleged constitutional violation. *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). "In other words, a municipality may not be found liable simply because one of its employees committed a tort." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

Plaintiff alleges that Sheriff Bower adopted or permitted a policy, custom, or practice relative to inmate disciplinary hearings conducted in the Orleans County Jail which failed to afford inmates procedural due process before depriving an inmate of a liberty interest. However, Plaintiff has made no allegations that create a plausible inference that Sheriff Bower or any other defendant took action to establish such a policy or practice. "The mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). Bare and generalized allegations such as these are routinely dismissed. *See e.g. Nolan v. County of Erie*, 19-CV-1245, 2020 U.S. Dist. LEXIS 72729, at * 29-31 (W.D.N.Y. Apr. 24, 2020); *Smith v. Town of Lewiston*, 18-CV-1069, 2020 U.S. Dist. LEXIS 136602, at *35-36 (W.D.N.Y. July 20, 2020).

Plaintiff specifically alleges that he was deprived the ability to present evidence and call witnesses in his defense during his disciplinary hearing. From this he discerns an official policy or practice. In the Second Circuit, a *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that

connects this incident to a municipal policy or practice. *Pittman v. City of New York*, 14-CV-4140, 2014 U.S. Dist. LEXIS 178420, at *24-25 (E.D.N.Y. Dec. 30, 2014) (requiring plaintiff to show that employees' acts were done pursuant to municipal policy, were "sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware," or could be inferred from evidence of deliberate indifference of supervisory officials to such abuses); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy"); *Wyatt v. City of Lackawanna*, 17-CV-446, 2020 U.S. Dist. LEXIS 139719, at *17-19 (W.D.N.Y. Aug. 5, 2020) (dismissing *Monell* claim where complaint only contained allegations of harm focused on a single incident); *Gordon v. City of New York*, 10-CV-5148, 2012 U.S. Dist. LEXIS 44251, at *11 (E.D.N.Y. March 29, 2012) (§ 1983 claims against City of New York dismissed where plaintiff's allegations of a common policy or practice was supported by nothing more than the facts of what occurred in his particular case). Plaintiff needs to allege more than the facts of his particular claim and he has not done so.

Nor has Plaintiff plausibly alleged that Sheriff Bower was "deliberately indifferent" to a custom or practice which caused Plaintiff injury. For a *Monell* claim, "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Bryan County Bd. or Comm'rs v. Brown*, 520 U.S. 397 (1997)). A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Id*. at 62.

A continued adherence to an approach that policymakers knew or should have known had failed to prevent tortious conduct by employees may show such deliberate indifference or "conscious disregard for the consequences of their action." *See id.* Three requirements must be met before a municipality's failure to train or supervise constitutes deliberate indifference: (1) a policymaker must know "to a moral certainty" that employees will confront a given situation; (2) the situation must present the employee with a difficult choice of the sort that training or supervision will make less difficult; and (3) the wrong choice by municipal employees will frequently cause the deprivation of a citizen's constitutional rights. *See Walker v. New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). Demonstration of deliberate indifference requires a showing that the official made a conscious choice and was not merely negligent. *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citations omitted). Here, Plaintiff has not plausibly alleged a pattern of similar constitutional violations, nor any facts suggesting that Sheriff Bower consciously disregarded the effect of improperly trained employees.[9]

For these reasons, the Court recommends dismissal of Plaintiff's third cause of action.

---

[9] In his response brief, Plaintiff asserts that his amended complaint also alleges that Sheriff Bower's policies or practices subjected inmates, including Plaintiff, to unconstitutional conditions of solitary confinement. To the contrary, Plaintiff's complaint only alleges that Sheriff Bower adopted or permitted unconstitutional policies or practices relative to inmate disciplinary hearings. (Dkt. No. 14, ¶¶ 61-63). He alleges that the result of that policy or practice was his placement in administrative segregation and "keeplock," not that the confinement practice itself, was unconstitutional. (*Id.*). His complaint does not separately allege a *Monell* claim based on unconstitutional conditions of confinement. Moreover, a properly plead *Monell* claim alleging an unconstitutional policy or practice relative to segregation or "keeplock" confinement based on these facts would be subject to dismissal for lacking specific allegations regarding municipal customs, policies, or practices regarding the individual treatment of Plaintiff.

### 4. *Statutory Negligence Claim*

Lastly, Defendants move to dismiss Plaintiff's claim that, under common law and New York County Law § 217, Orleans County breached a duty to maintain safe conditions within the County Jail.

New York State County Law Section 217 provides that "[e]ach county shall continue to maintain a county jail as prescribed by law." "The County's duty to provide and maintain the jail building is distinguishable from [a] Sheriff's duty to receive and safely keep prisoners in the jail over which he has custody." *Ball v. County of Erie*, 20-CV-369, 2020 U.S. Dist. LEXIS 207440, at *6 (W.D.N.Y. Nov. 4, 2020), *adopted by* 2021 U.S. Dist. LEXIS 238991 (Dec. 14, 2021). It is well settled that a municipality owes a duty to inmates in correctional facilities to safeguard them from foreseeable risks of harm. *Id*. at *7 (citing *Villar v. County of Erie*, 126 A.D.3d 1295, 1296 (4th Dep't 2015)); *see Solomon v. Nassau County*, 759 F. Supp. 2d. 251, 264 (E.D.N.Y. 2011) (internal quotation omitted) ("[…] the prison facility, and the County that manages it, owes a duty to its inmates to 'maintain its property in a reasonably safe condition in view of all the circumstances, including the likelihood and seriousness of a potential injury and the burden of avoiding such risk.'"). However, "the County is not an insurer of prisoner safety and negligence cannot be inferred merely because an incident occurred." *Iannelli v. County of Nassau*, 156 A.D.3d 767, 768 (2nd Dep't 2017).

Here, Plaintiff merely alleges that the County was negligent in maintaining the jail because Sergeant Caufield allegedly pushed him into a wall. He does not allege any facts indicating a dangerous condition or defect within the jail premises. Such a conclusory statement does not plausibly allege that the jail conditions caused him harm, nor that

there was a foreseeable risk of such harm. This case is readily distinguishable from *Ball*, which involved a plaintiff who was injured by an insect bite suffered while he was an inmate at the Erie County Holding Center. *See* 2020 U.S. Dist. LEXIS 207440, at *1. There, the Court accepted that the County may have a duty to protect inmates from the risk of harm presented by insect or spider bites. *Id*., at *8. Here, there is no similar allegation that the County failed to maintain its facility in reasonably safe conditions.

For these reasons, the Court recommends dismissal of Plaintiff's seventh cause of action.

5. **Leave to Amend**

As Plaintiff has already had opportunity to amend his complaint and has not sought leave to further amend his pleading in response to this motion, the Court finds it appropriate to recommend dismissal of the specified causes of action with prejudice. *See Red Mt. Med. Holdings, Inc. v. Brill*, 20-CV-2652, 2021 U.S. Dist. LEXIS 184946, at *41 n.16 (S.D.N.Y. Sept. 27, 2021) (quoting *Chen v. Antel Commc'ns*, 653 Fed. Appx. 43, 44 (2d Cir. 2016)) ("'Although federal courts are inclined to grant leave to amend following a dismissal order,' a district court does not abuse its discretion if it dismisses a claim with prejudice where, as here, 'leave to amend has not been sought.'").

## CONCLUSION

For the foregoing reasons, it is recommended that Defendants' partial motion to dismiss (Dkt. No. 18) be granted in part and denied in part. In sum, the Court recommends that Plaintiff's second (negligent hiring and training), third (*Monell* claim), and seventh (statutory negligence) causes of action be dismissed, and that Plaintiff's fourth (due

process) cause of action, as well as his remaining causes of action, survive this motion to dismiss.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated:       March 15, 2022
            Buffalo, New York

                                   */s/ Michael J. Roemer*
                                   MICHAEL J. ROEMER
                                   United States Magistrate Judge